NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| OVERLAND LEASING GROUP, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-05850 (SDW) |
| | : | |
| FIRST FINANCIAL CORPORATE SERVICES, INC.; FORTRAN GROUP INTERNATIONAL, INC.; F.F.C. SERVICES, INC.; GEORGE R. FUNARO & CO., P.C.; KMA ASSOCIATES; DINESH DALMIA; RADHA DALMIA; IGTL SOLUTIONS (USA), INC., VANGUARD INFO-SOLUTIONS CORPORATION; IGTL SOLUTIONS (USA), INC.; GREG L. RHODES; THOMAS TURRIN & CO., CPA, P.C.; and JOHN DOES I THROUGH X, | : | OPINION<br><br>November 7, 2007 |
| Defendants. | : | |

**WIGENTON**, District Judge.

Before the Court is defendant George R. Funaro & Co., P.C.'s ("Defendant") Motion to Dismiss plaintiff Overland Leasing Group, LLC's ("Plaintiff") Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In the Amended Complaint, Plaintiff alleges that Defendant committed acts of negligent misrepresentation, accountants' malpractice, and intentional tort. The Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons

1

discussed below, the Court denies Defendant's Motion to Dismiss.

**I. Background**

This action arises out of an alleged fraudulent equipment leasing scheme centered in New Jersey involving the leasing of substandard and/or non-functional computer and technology equipment marketed and warranted as new, fully functional, and state-of-the-art. (Am. Compl. ¶ 21.) Plaintiff is the assignee for value of equipment leased to Allserve Systems Corp. ("Allserve"),[1] a Texas corporation with its principal place of business in North Brunswick, New Jersey. Plaintiff alleges that Defendant,[2] along with KMA Associates and Thomas Turrin & Co., CPA, P.C. (collectively the "Accountant Defendants") furthered the unlawful scheme of the other defendants in this matter by preparing financial statements and audits that did not reflect the true financial conditions of Allserve. (Am. Compl. ¶ 22.)

Plaintiff filed a complaint on December 6, 2006 against all defendants. By Order dated May 8, 2007, the Court allowed Plaintiff to amend the original complaint. On June 7, 2007, Plaintiff filed the Amended Complaint alleging negligent misrepresentation, accountants' malpractice, and specifying the addition of an intentional tort claim.[3]

---

[1] Allserve is a debtor in a bankruptcy proceeding in the United States Bankruptcy Court for the District of New Jersey. As such, Allserve is not named as a defendant in this matter.

[2] Defendant is a New York professional corporation that acted as an auditor and accountant for Allserve. (*See* Am. Compl. ¶ 5.)

[3] In addition to negligent misrepresentation, accountants' malpractice, and intentional tort claims against the Accountant Defendants, Plaintiff's Amended Complaint sets forth claims for breach of contract, fraud, and violations of the Federal Racketeer Influenced & Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, against all other defendants.

**II. Legal Standard**

A claim is dismissed pursuant to Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Because granting a motion to dismiss under Rule 12(b)(6) may result in premature dismissal, the court must accept "the allegations of [a] complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff." *Bd. of Trs. of Bricklayers v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (D.N.J. 2001). Thus, a motion to dismiss under Rule 12(b)(6) "'is designed to screen out cases where 'a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted.'" *Port Author. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 312 (3d Cir. 1999).

**III. Discussion**

Plaintiff argues that it has adequately pled claims of accountants' malpractice and negligent misrepresentation under both New Jersey and New York law. (*See* Pl.'s Opp'n at 11-21.) Plaintiff also contends that it has adequately pled a claim of intentional tort. (*Id.* at 21-27.) Further, Plaintiff claims that New Jersey's accountant liability statute applies exclusively to New Jersey accountants, and therefore, does not provide a "safe harbor for Defendant['s] . . . negligence." (*Id.* at 12.) Defendant, however, asserts that Plaintiff has not adequately pled such claims whether under New Jersey or New York law. (*See* Def.'s Mot. to Dismiss at 7-11; Def.'s Reply at 4-7.) Furthermore, Defendant maintains that should this Court engage in a choice of law analysis, New York has a greater interest in resolving the matter, and therefore, its law must govern the Court's analysis. (*See* Def.'s Reply at 11-12.)

**A. Choice of Law**

"Federal courts sitting in diversity must apply the choice of law rules of the forum in which they sit." *Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 370 (D.N.J. 2004). Accordingly, the Court will apply New Jersey's choice of law rule, "'which requires application of the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation.'" *Id.* (quoting *Gantes v. Kason*, 145 N.J. 478, 484 (1996)). Under this "governmental interest test," the court must "'first determine whether a conflict exists between the laws of the interested states,' and, if the court finds a conflict, then determine 'the state with the greatest interest in governing the particular issue.'" *Id.* at 371 (quoting *Veazey v. Doremus*, 103 N.J. 244, 248, 251 (1996)). If no conflict exists, however, the court applies the law of the forum state.[4] *Hoffer v. Infospace.com, Inc.*, 102 F. Supp. 2d 556, 562 (D.N.J. 2000); *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 469 (D.N.J. 1998).

In New Jersey, accountant liability to third parties is governed by N.J. Stat. Ann. § 2A:53A-25.[5] The statute provides that an accountant cannot be liable to a third party unless the accountant:

> (a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was specifically identified to the accountant in connection with a specified transaction made by the claimant;

---

[4] The Third Circuit Court of Appeals has stated that, where no conflict exists, the applicable laws of either state may be used "interchangeably." *See Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006) (citing *On Air Entm's Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 149 (3d Cir. 1999)).

[5] N.J. Stat. Ann. § 2A:53A-25 was enacted "to limit the impact of [the] 1983 *Rosenblum* decision that greatly expanded the scope of accountants' liability to all reasonably foreseeable claimants." *E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 179 N.J. 500 (2004). Notably, N.J. Stat. Ann. § 2A:53A-25 does not shield accountants for intentional acts of fraud or intentional acts which assisted a client in committing fraud.

> (b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and
> (c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service[.]

N.J. Stat. Ann. § 2A:53A-25b(2)(a)-(c) (2000). The New Jersey Supreme Court applied the accountant liability statute for the first time in *E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 179 N.J. 500, 502 (2004). In *Dickerson*, members or stockholders of Twin County Grocers, Inc. ("Twin County") sued Ernst & Young, LLP ("Ernst & Young") for negligently providing audit services for Twin County on which the plaintiffs relied to their detriment. *See id.* The *Dickerson* court held that the complaint failed to allege any specific transaction in which plaintiffs were going to engage with Twin County and that it did not contain any language suggesting that Ernst & Young understood the plaintiffs' reliance on its audit services. *See id.* at 503. Further, because the complaint did not allege, expressly or impliedly, any of the elements for accountant liability to a third party under N.J. Stat. Ann. § 2A:53A-25, dismissal for failure to state a claim was proper in *Dickerson*. *See id.*

New Jersey's accountant liability statute has been adopted, with some modification, from the test established by the New York Court of Appeals in *Credit Alliance*. *See id.* at 504. In *Credit Alliance*,[6] plaintiffs in the business of providing financing sued accountants for negligently

---

[6] *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 541 (1985). The *Credit Alliance* opinion is a consolidation of two appeals to the New York Court of Appeals. In the first consolidated matter, plaintiffs, major financial service companies, provided financing to L.B. Smith, Inc. of Virginia ("Smith") based upon financial statements prepared by defendant Arthur Andersen & Co., which overstated Smith's assets and net worth. The *Credit Alliance* court dismissed plaintiff's complaint because it contained "no adequate allegation of either a particular purpose for the reports' preparation or the prerequisite conduct on the part of the accountants." *Id.* at 553.
In the second consolidated matter by European American Bank and Trust Company, the *Credit Alliance* court held that EAB's complaint against S&K for negligence may proceed because "S&K was well aware that a primary, if not the exclusive, end and aim of auditing its client, Majestic Electro, was to provide EAB with the financial information it required." *See id.* at 554.

preparing financial reports on which the plaintiffs relied to their detriment. The *Credit Alliance* court stated that "a relationship 'so close as to approach that of privity' remains valid as the predicate for imposing liability upon accountants to noncontractual parties for the negligent preparation of financial report." *Id.* at 546. The *Credit Alliance* court thus declared:

> Before accountants may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports, certain prerequisites must be satisfied: (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance.

*Id.* at 551.

New Jersey's accountant liability statute and New York's *Credit Alliance* test substantially mirror each other. Subsection (a) of New Jersey's accountant liability statute requires that there be a "specified transaction." N.J. Stat. Ann. § 2A:53A-25b(2)(a). Similarly, the first prong of New York's *Credit Alliance* test requires a "particular purpose or purposes." *Credit Alliance*, 65 N.Y.2d at 551. Furthermore, subsection (b) of New Jersey's accountant liability statute and the second prong of New York's *Credit Alliance* test both require an intention to rely on the part of the claimant. N.J. Stat. Ann. § 2A:53A-25b(2)(b); *Credit Alliance*, 65 N.Y.2d at 551. Moreover, subsection (c) of New Jersey's accountant liability statute and the third prong of New York's *Credit Alliance* test require an indication of an accountant's understanding of the claimant's intended reliance. N.J. Stat. Ann. § 2A:53A-25b(2)(c); *Credit Alliance*, 65 N.Y.2d at 551. Application of one state's law over the other would not impact the outcome of this case. The Court therefore concludes that there is no actual conflict between New Jersey and New York with respect to an accountant's liability to a third

party.[7]  Because no actual conflict exists, the Court will apply the law of the forum state. Accordingly, the Court will apply New Jersey law.

**B. Negligent Misrepresentation and Accountants' Malpractice Claims**

Despite Defendant's contention that New York law should apply, Defendant maintains that Plaintiff has not stated a claim even under New Jersey law and that the Court should therefore dismiss Plaintiff's Amended Complaint. Specifically, Defendant claims that Plaintiff's "allegations [of negligent misrepresentation and accountants' malpractice] indisputably fall far short of the requisite 'relationship or bond' that [Plaintiff] would have to establish through some conduct of [Defendant's] in order to impose liability upon it [under N.J. Stat. Ann. § 2A:53A-25]." (Def.'s Mot. to Dismiss 10.)[8]

Under the liberal federal pleading rules, it is not required to plead evidence or all the facts that serve as a basis for the claim. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977); *see also Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004). What is required is that "the pleadings give [the] defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n.3 (1984). Additionally, "[i]f more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules." *Alston*, 363 F.3d at n.6. "It is a first principle of federal civil procedure that litigants 'are entitled to discovery before being put to their proof.'" *Id.*

---

[7] Neither Plaintiff or Defendant argue that one state's law should apply over the other with regard to Plaintiff's intentional tort claim. However, the Court concludes that no actual conflict exists between New Jersey and New York with regard to intentional tort.

[8] Additionally, Defendant states that had Plaintiff "bothered to contact [Defendant], it would have learned that, in October 2004, [Defendant] had retracted and withdrawn its audit opinion on Allserve's financial statements for the period ended March 31, 2004[.]" (Def.'s Mot. to Dismiss n. 2.)

7

After considering the liberal federal pleading rules and the high standards a movant must meet in order to dismiss a complaint under Rule 12(b)(6), the Court determines that denying Defendant's Motion to Dismiss is appropriate at this time. Plaintiff's Amended Complaint has provided Defendant fair notice of the negligent misrepresentation and accountants' malpractice claims and the grounds upon which they rest. The Court recognizes that Plaintiff has not proven all the elements for accountant liability. However, "'[t]he issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his claims.'" *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 325 (D.N.J. 1999) (citation omitted). Thus, by allowing Plaintiff to avail itself of discovery, Plaintiff will have an opportunity to prove the required linking conduct for accountant third party liability. To dispose of these claims at this early stage in the litigation process would be premature. Accordingly, Plaintiff's claims of negligent misrepresentation and accountants' malpractice may proceed.

**C. Intentional Tort Claim**

Defendant, argues that Plaintiff's intentional tort claim must be dismissed because it was not pled with particularity pursuant to Federal Rule of Civil Procedure 9(b).[9] To state a claim of intentional tort or fraud, Rule 9(b) requires that a plaintiff plead the following: "(1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage." *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 284 (3d Cir. 1992). However, "[d]espite these stringent requirements, the courts should be 'sensitive' to the fact that application of the Rule prior to discovery 'may permit sophisticated

---

[9] Rule 9(b) provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

defrauders to successfully conceal the details of their fraud.'" *Id.*

Accepting the facts in the pleadings as true and giving Plaintiff the benefit of all reasonable inferences in the light most favorable to it, the Court concludes that Plaintiff has adequately pled intentional tort under Federal Rule of Civil Procedure 9(b). Despite Defendant's contentions, the Court is satisfied that Plaintiff has pled a claim of intentional tort with particularity so as to survive a motion to dismiss. Plaintiff asserts that Defendant "furthered, concealed and perpetuated the unlawful scheme of the other Defendants by preparing financial statements and audit reports thereon which did not reflect and which masked the true financial conditions of Allserve and Allserve, plc." (Am. Compl. ¶ 122.) Plaintiff also contends that Defendant "knew that if the information it supplied to investors was materially false or incomplete, investors, like Plaintiff, would be injured in their property." (Am. Compl. ¶ 129.) Moreover, Plaintiff claims that "Plaintiff actually requested, reviewed and relied upon the audit opinions and financial statements of [Defendant] . . . before investing in the lease assignments." (Am. Compl. ¶ 122.) As such, Plaintiff's claim of intentional tort is sufficient to survive Defendant's 12(b)(6) Motion to Dismiss.

**IV. Conclusion**

For the foregoing reasons, the Court denies Defendant's Motion to Dismiss.

s/ Susan D. Wigenton, U.S.D.J.