# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OVERLAND LEASING GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> FIRST FINANCIAL CORPORATE SERVICES, INC.; FORTRAN GROUP INTERNATIONAL, INC.; F.F.C. SERVICES, INC.; GEORGE R. FUNARO & CO., P.C.; KMA ASSOCIATES; DINESH DALMIA; RADHA DALMIA; iGTL SOLUTIONS (USA) INC.; VANGUARD INFO-SOLUTIONS CORPORATION; IGTL SOLUTIONS (USA), INC.; GREG L. RHODES; THOMAS TURRIN & CO., CPA, P.C.; AND JOHN DOES I THROUGH IX; <br><br> Defendants. | Civil Action No. 2:06-cv-05850 (SDW) (MCA) <br><br><br> OPINION <br><br><br><br> December 18, 2009 |
| GEORGE R. FUNARO & CO., P.C., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> SANJEET ANAND and JOHN DOES I THROUGH X, <br><br> Third-Party Defendants. | |

Before the Court are Defendants', Fortran Group International, Inc. ("Fortran"), George R. Funaro & Co., P.C. ("Funaro"), and Thomas Turrin & Co., CPA, P.C. ("Turrin"), motions for summary judgment pursuant to Fed. R. Civ. P. 56(c). This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Venue is proper pursuant to 28 U.S.C. §

1

1391(a). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, this Court **denies** Fortran's Motion for Summary Judgment, **grants** Funaro's Motion for Summary Judgment, and **grants** Turrin's Motion for Summary Judgment.

## FACTUAL BACKGROUND

This action arises from allegations of a fraudulent equipment leasing scheme centered in New Jersey involving the leasing of computer and technology equipment which Plaintiff, Overland Leasing Group, LLC ("Overland"), contends was substandard and/or non-functional but marketed and warranted as new, fully functional and state of the art. (Am. Compl. ¶ 21.) Plaintiff is the assignee for value of equipment leased to Allserve Systems Corp. ("Allserve"),[1] by Defendants Fortran, First Financial Corporate Services ("First Financial"), and iGTL Solutions (USA), Inc. ("iGTL"). (Am. Compl. ¶ 21.) Plaintiff alleges that Fortran induced the fraudulent transactions by misrepresenting the lease equipment and failed to perform terms of the contract. (Am. Compl. ¶¶ 87, 95.) Plaintiff further alleges that Defendants Funaro and Turrin furthered the fraudulent schemes of other defendants in this matter by preparing financial statements and audits that did not reflect the true financial conditions of Allserve. (Am. Compl. ¶ 22.)

### A. Fortran Motion Background

Fortran, a Florida corporation, is a direct leasing firm specializing in technology equipment leasing. On October 27, 2004, Fortran and Allserve entered into a Master Lease Agreement which enabled the parties to enter into subsequent lease orders through which Allserve would lease equipment from Fortran subject to the Master Lease

---

[1] Allserve is a debtor in a bankruptcy proceeding in the United States Bankruptcy Court for the District of New Jersey. As such, Allserve is not named as a defendant in this matter.

Agreement terms. There were at least five such lease orders including Lease Order No. 003 ("Fortran Lease"). (Am Compl. ¶37.) The Fortran Lease covered three servers, two Dell Poweredge and one IBM (the "Fortran Equipment"), along with "Comprehensive Interactive Management Solutions plus CDR software with list." (Fortran's Ex. D.)

On March 15, 2005, Plaintiff entered into an assignment agreement with Fortran and acquired Fortran's interest in the Fortran Lease for $1,024,826 ("Fortran Assignment Agreement"). (Am. Compl. ¶ 43.) Within the Fortran Assignment Agreement, Fortran made various representations and warranties, including:

(1) The information set forth on [the attached schedule] . . . is true and correct in all material respects.

(2) The [Fortran Assignment Agreement] arose from a bona fide lease, purchase money loan or installment sale to the Lessee, complying in all material respects with applicable law.

(3) [Fortran] is the sole owner of and has good and marketable title to the Assigned Interest, free and clear of all liens, claims and encumbrances of others, other than those created in favor of Lessee under the Lease.

. . .

(5) . . . Seller either has (A) good and marketable title to the Equipment, free and clear of all liens, claims and encumbrances of others, other than those created in favor of Lessee under the Lease, or (B) a perfected, first priority security interest in and to the Equipment.

. . .

(13) The Equipment has been delivered to and accepted by Lessee and, to the best of Seller's knowledge, is in good working order and condition, is in the Lessee's possession at the location specified. . . and, to the best of Seller's knowledge, has suffered no casualty loss.

[(Fortran's Ex. D.)]

The Fortran Assignment Agreement contains the following repurchase obligation:

> In the event of a breach by Seller of any of its covenants or the falsity or inaccuracy of any of Seller's representations or warranties, in each case set forth in this Agreement, which breach, falsity or inaccuracy cannot be cured by Seller within the time period set forth in Section 8 hereof, Seller, upon Buyer's written demand, shall repurchase the Assigned Interest from Buyer for an amount equal to the Repurchase Price.

[(Fortran's Ex. D.)]

Schedule 1 to the Fortran Assignment Agreement states that the original purchase price for the equipment, including tax, was $1,024,826.02, and Fortran attached an invoice indicating that it had paid this amount for the equipment. (Fortran's Ex. D.) In August, 2005, Allserve ceased making payments on the Fortran Lease.

### B. Funaro Motion Background

Funaro is a New York professional corporation engaged in the business of certified public accounting. (Am. Compl. ¶5.) Funaro audited Allserve's financial statements and issued an Independent Auditor's Report on June 23, 2004 ("Funaro Independent Auditor's Report"). (Sarkar Dep. 81, Jan. 22, 2009.) Following reports that the principal of Allserve was involved in securities fraud in India, Funaro investigated and found discrepancies in the audited financial statements provided by Allserve.[2]

On September 27, 2004, Funaro informed Allserve that it was retracting the Independent Auditor's Report and demanded that Allserve return all copies of the report to Funaro. (Funaro's Ex. H.) On October 12, 2004, Funaro sent Allserve a revised Independent Auditor's Report, stating that the original report should no longer be relied upon and disclaiming any ability to issue an opinion as to Allserve's finances. (Funaro's Exs. I, J.) Funaro's staff accountant and outside counsel also contacted Allserve to

---

[2] At least one of the accounts receivable whose existence and collectibles had been represented to Funaro was not collectible. (Catalano Dep. 25, 30-32, 42, Jan. 26, 2009; Sarkar Dep. 135-36, 175-76; Judistir Dep. 86, Jan. 26, 2009) In addition, Funaro obtained further information indicating that confirmations of the existence of certain of Allserve's assets may have been forged (Sarkar Dep. 145-47, 158-59).

4

reiterate that all copies of the original report needed to be returned. (Sarkar Dep. 184-85, 189-90; Catalano Dep. 58-59, 62-63.) Later that month, Allserve returned thirty-six of the forty copies of the original Independent Auditor's Report and informed Funaro that two copies were in the custody of Bank of America. (Funaro's Ex. M.) Funaro informed Bank of America of the retraction and that Funaro's opinion was not to be relied upon. The recipient of the other two copies was not identified and thus not informed of the retraction. (Funaro's Exs. H, M; Judistir Dep. 98; Sarkar Dep. 192-93; Catalano Dep. 64-65.)

In early 2005, Plaintiff obtained a copy of the original Independent Auditor's Report from ACC Capital Corp. (Funaro's Interrog. Resp. 2; Parisi Dep. 37-41, Sept. 24, 2008.) It is unclear where ACC Capital obtained its copy of the Independent Auditor's Report but the copy was transmitted by fax from Allserve to someone on October 13, 2004, after Funaro's retraction and prior to Allserve's representation that it did not know where two of the copies were. (Funaro's Exs. C, M.) Plaintiff does not have any documents reflecting direct communications with Funaro. (Funaro's Exs. W, X.)

In connection with the Fortran Assignment Agreement, Plaintiff's primary credit analyst, Stephan Parisi, prepared a credit analysis and accompanying Request for Approval form ("RFA") for Plaintiff's Investment Committee. (Funaro's Ex. T; Parisi Dep. 47-49, 51-52, 56, Sept. 24, 2008.). The RFA states "the underwriting and recommendation for this transaction is based on the financial strength of the guarantor," Allserve Systems plc ("Allserve UK"), whose financial statements were audited by KMA Associates. (Funaro's Ex. T.) Parisi stated that the RFA did not rely on the Independent Auditor's Report. (Parisi Dep. 50-51, 72, Sept. 24, 2008.)

Plaintiff does indicate that it relied on a report issued by Funaro in January 2005, compiling Allserve's consolidated balance sheet and statements of income ("the Compilation") for the period ending December 31, 2002. (Funaro's Exs. D, Z; Sarkar Dep. 2007.) This report contained the following disclaimer:

> A compilation is limited to presenting in the form of financial statements information that is the representation of management. We have not audited or reviewed the accompanying consolidated financial statements and accordingly, do not express an opinion or any other form of assurance on them.
>
> [(Funaro's Ex. D.)]

Subsequent to completion of the RFA, Plaintiff obtained a copy of the Compilation from ACC Capital Corp. (Funaro's Ex. V; Parisi Dep. 104, 115-16, Sept. 24, 2008.) Parisi reviewed the Compilation on or shortly after Plaintiff had already issued a commitment letter to First Financial and on the same day it issued a commitment letter to Fortran. (Parisi Dep. 101-104, Sept. 24, 2008; Funaro's Exs. R, S; Pedersen Dep. 45-47, 50-51.) Nonetheless, Plaintiff alleges that it relied upon Funaro's reports in deciding to purchase the equipment leases from First Financial and Fortran. (Am. Compl. ¶¶ 122, 134.)

### C. Turrin Motion Background

Defendant Turrin is a New York professional corporation engaged in the business of certified public accounting. (Am. Compl. ¶ 6.) On or about July 29, 2005, Turrin prepared an audit report for Allserve, for the year ending March 31, 2005 ("Turrin's Audit Report"). (Turrin's Ex. E.)

Plaintiff obtained a copy of Turrin's Audit Report in August 2005 from a third party, ACC Capital, by email, after having already entered into the subject leases in or about March 2005. (Parisi Dep. 5, 71, 73, 135-39, Sept. 24, 2008.) Parisi explained the

Audit Report was part of the analysis that would have taken them through the point of actual funding. In or about the same time Plaintiff received the Turrin Audit Report, Allserve ceased making payments on the First Financial Equipment Lease and the Fortran Lease. (Am. Compl. ¶ 47.) Subsequently, Allserve filed for bankruptcy in November 2005. Id.

Plaintiff admits it did not communicate directly with Turrin (Turrin Interrog. Resp. 8.), there was no awareness or acknowledgment between Plaintiff and Turrin that Plaintiff was relying upon Turrin's audit report in connection with any transaction (Turrin's Ex. L), and there is no evidence anyone from Plaintiff's firm is aware of any communications between Turrin and Plaintiff. (Parisi Dep. 5, 135, 139, Sept. 24, 2008; Pederson 7-8, 96; Wilks 197-99, Sept. 26, 2008.) Plaintiff's primary credit analyst testified that the only reason for his belief that Turrin misrepresented entries in its Audit Report is "[t]he amount of time it took, the short amount of time that it took for there to be from what would appear to be a sound financial position . . . to a bankruptcy proceeding . . . ." (Parisi Dep. 164-65, Sept. 24, 2008.) Likewise, Plaintiff's senior managing director, H. Russell Wilks, testified that he believed that Turrin knowingly misrepresented information in the Audit Report due to the short time between the completion of the report and Allserve's bankruptcy. (Wilks Dep. 211.)

**PROCEDURAL BACKGROUND**

Plaintiff filed an amended complaint on June 7, 2007, alleging negligent misrepresentation, accountants' malpractice, and intentional tort against the Accountant Defendants. Plaintiff's Amended Complaint further alleges breach of contract, fraud, and violations of the Federal Racketeer Influenced & Corrupt Organizations Act (RICO), 18

U.S.C. §§ 1961-1968, against Fortran and other defendants. Both Funaro and Turrin filed motions to dismiss, on June 29, 2007 and August 13, 2007, respectively. Those motions were denied, and Funaro and Turrin now request that this Court grant their summary judgment motions as to all of the counts against them. Defendant Fortran now moves for summary judgment dismissing Plaintiff's breach of contract and fraud claims against it.

**LEGAL STANDARD**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and

inferences in the light most favorable to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991).

## DISCUSSION

### A. Fortran Motion

#### 1) Breach of Contract

Plaintiff alleges that Fortran committed breach of contract by not complying with the representations and warranties or the repurchase obligation listed in the Fortran Assignment Agreement. (Pl.'s Br. 9.) Fortran disagrees and seeks summary judgment as it claims it did not commit a breach of any of the representations or warranties. (Fortran's Br. 11.)

In order to prove breach of contract, a plaintiff must demonstrate that (1) a contract exists between the parties; (2) the defendant breached that contract; (3) the plaintiff suffered damages as a result of the breach; and (4) the plaintiff "performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

Fortran argues that Plaintiff has not put forth sufficient proof as to the second element of breach of contract, whether a breach actually occurred. "Whether conduct constitutes a breach of contract and, if it does, whether the breach is material are ordinarily jury questions." *Travelodge Hotels, Inc. v. Honeysuckle Enters.*, 357 F.Supp. 2d 788, 797 (D.N.J. 2005) (quoting *Magnet Resources, Inc. v. Summit MRI, Inc.*, 723 A.2d 976, 981 (N.J. Super. Ct. App. Div. 1998)). A material breach is one that "deprive[s] the injured party of the benefit that is justifiably expected" under the contract.

*General Motors Corp. v. New A.C. Chevrolet*, Inc., 263 F.3d 296, 315 (3d Cir. 2001) (citing 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 8.16 at 497 (2d ed. 1998)).

Genuine issues of material fact exist as to whether Fortran breached the contract. The Fortran Assignment Agreement states that "to the best of Seller's knowledge, [the equipment] is in good working order and condition." Parisi disputed this assertion at his deposition and testified that according to Plaintiff's experts, the servers "were not in good working order as to perform the overall functions for which they were originally designed." (Parisi Dep. 5, Sept. 24, 2008; Parisi Dep. 237-38, Sept. 25, 2008.) Wilks, Plaintiff's managing director, declared that he did not know if the servers were in good working order and condition because the post-bankruptcy inspection revealed that they were not installed at that time; that he believed that these servers were never installed; and that "good working order meant that it's in the circumstances that it was supposed to support, . . . [a]nd the equipment was sitting unplugged in a room and not installed." (Wilks Dep. 177-78.) Further, although Plaintiff's auditor found that the serial numbers of the servers matched those listed in the Fortran Lease, its expert, Dr. Eric A. Kreuter, opined that "[m]atching serial numbers to vendor invoices is not sufficient to determine interior components, fitness for use, or value." (Fortran's Exs. D, H; Pl.'s Ex. A.)

The parties' submissions also dispute the actual value and cost of the equipment. The Fortran Assignment Agreement indicates that "[t]he information set forth on" a schedule listing the original cost of the equipment as $1,024,826.02, "is true and correct in all material respects." However, according to Plaintiff's submissions, the cost of the hardware could be as low as $1000 per server if purchased used or at most $16,000 if new. (Pl.'s Ex. A.) Wilks testified that under his interpretation of the Fortran Lease

Agreement, the value of the software associated with the Fortran equipment would increase this total by only ten percent. (Wilks Dep. 157-58; Fortran's Ex. D.) Derrick Bavol, President of Fortran, explained that the original cost listed on the schedule included not only the servers but "the entire solution package" which included the software and did not necessarily amount to the value of the equipment. (Bavol Dep. 10, 73-74, Mar. 5, 2009.)

Based on this evidence, this Court concludes that a reasonable jury could return a verdict in Plaintiff's favor. Questions of fact remain as to whether the equipment was in good working condition and whether Fortran misrepresented the cost of the equipment. Further, once these questions are answered, a jury must still decide whether the condition or represented cost of the equipment resulted in a breach of the Fortran Assignment Agreement. Until the final question of whether Fortran committed a breach of contract as to the representations and warranties has been determined, this Court cannot reach any conclusions as to the breach of the repurchase agreement. Therefore, this Court denies Fortran's Motion for Summary Judgment as to the breach of contract claims.

### 2) Common Law Fraud

Defendant Fortran moves for summary judgment dismissing Plaintiff's fraud claim on the ground that Plaintiff has failed to set forth specific facts showing that a misrepresentation as to the value or cost of the equipment was made.

To establish a claim of common law fraud, the plaintiff must prove by clear and convincing evidence: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting

damages." *McCormac v. Qwest Commc'ns Int'l*, 904 A.2d 775 (N.J. Super. Ct. App. Div. 2006) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)); *Albright v. Burns*, 503 A.2d 386, 391 (N.J. Super. Ct. App. Div. 1986). New Jersey courts have determined that a statement alleged to be a misrepresentation is considered material if:

> (a) a reasonable person would attach importance to its existence in determining a choice of action . . .; or
>
> (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.
>
> [*Mango v. Pierce-Coombs*, 851 A.2d 62, 69 (N.J. Super. Ct. App. Div. 2004) (quoting *Ji v. Palmer*, 755 A.2d 1221, 1228 (N.J. Super. Ct. App. Div. 2000) (alterations in original).]

Purposely making an inaccurate representation as to the value of an asset could satisfy the material misrepresentation requirement. *See Carton v. Choice Point, Inc.*, 482 F.Supp. 2d 533, 535 (D.N.J. 2007).

As stated above, Plaintiff proffered evidence that creates an issue of material fact as to the original cost of the equipment and alleges that Fortran's misrepresentation of this cost led them to make determinations as to the value of the equipment and the lease. Plaintiff's Chief Financial Officer testified that Plaintiff relied on the stated cost of the equipment to determine its value. (Pedersen Dep. 114-16.) There is a genuine issue of material fact as to whether Fortran's statements regarding cost constituted a misrepresentation and if so whether a reasonable person would rely on these statements to make a determination as to the value of the Lease Assignment Agreement and whether to enter into such an agreement. For these reasons, summary judgment is not appropriate.

**B. Funaro Motion**

**1. Negligent Misrepresentation and Accountants' Malpractice**

Plaintiff alleges that Funaro committed acts of negligent misrepresentation and accountants' malpractice. Funaro argues Plaintiff has failed to demonstrate "linking conduct" between Funaro and Plaintiff as required to maintain both causes of action.

In New Jersey, accountant liability to third parties is governed by N.J. Stat. Ann. § 2A:53A-25. The statute provides that an accountant cannot be held liable to a third party unless the accountant:

> (a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was specifically identified to the accountant in connection with a specified transaction made by the claimant;
>
> (b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and
>
> (c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service[.]
>
> [N.J. Stat. Ann. § 2A:53A-25(b)(2).]

The Superior Court of New Jersey, Appellate Division has emphasized that "[t]here can be no liability unless the accountant used words or conduct 'directly expressed to the claimant,' which establish the accountant's understanding of the claimant's intended reliance on his work." *E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 825 A.2d 585, 589 (N.J. Super. Ct. App. Div 2003) (holding that the plaintiffs' claims for negligence failed because they were never identified as possible claimants and the complaint did not "contain any language even suggesting that defendant provided any expression directly to

plaintiffs, let alone one reflecting an understanding that they intended to rely on the audits").

Plaintiff continues to argue that N.J. Stat. Ann. § 2A:53A-25(b)(2) does not apply in the present case and that Funaro should be held liable under the common-law foreseeability rule previously adopted in New Jersey by *H. Rosenblum, Inc. v. Ernst & Young, LLP*, 461 A.2d 138 (N.J. 1983). "*H. Rosenblum, Inc.* has been abrogated by N.J. State. Ann. § 2A:53A-25 (1995)." *Crowley v. Chait*, 2004 WL 5434953 at 6 n.5 (D.N.J., 2004); *see also E. Dickerson*, 825 A.2d at 587. The New Jersey Legislature has expressly limited non-client claims against accountants by enacting N.J. Stat. Ann. § 2A:53A-25(b) with the specific purpose of restoring the concept of privity to accountants' liability to third parties. *E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 846 A.2d 1237, 1240 (N.J. 2004). Hence, non-clients such as Plaintiff may not sue accountants for damages for negligence unless Plaintiff can establish the elements of N.J. Stat. Ann. § 2A:53A-25(b)(2).[3]

In the present case, although Plaintiff alleges Funaro should have known of the potential future reliance on its work product by Plaintiff, it does not set forth evidence that it was "specifically identified to the accountant in connection with a specified transaction"; that Funaro "knew that [Plaintiff] intended to rely upon the professional accounting service in connection with that specified transaction"; or that Funaro "directly expressed to [Plaintiff], by words or conduct, [its] . . . understanding of [Plaintiff's] intended reliance on the professional accounting service." Plaintiff was never identified to Funaro in connection with this transaction and admits to never having any

---

[3] This Court has previously recognized that: (1) the New Jersey law governing accountants' liability to non-clients is virtually identical to that of New York; and (2) the New Jersey statute is applicable to Funaro (Funaro Order 4, May 8, 2007; Funaro Op. 6-7, Nov. 7, 2007.)

14

communication with Funaro. Plaintiff did not receive a copy of Funaro's Independent Auditor's Report until after Funaro had issued a retraction and attempted to identify the recipients of all of the reports. Moreover, Plaintiff received the documents from a third-party unrelated to Funaro.

The record demonstrates the absence of facts satisfying the elements of N.J. Stat. Ann. § 2A:53A-25(b)(2). After reviewing the facts and inferences in a light most favorable to the nonmoving party, this Court finds that no genuine issue of material fact exists. Accordingly, Defendant Funaro's Motion for Summary Judgment as it pertains to Plaintiff's negligent misrepresentation and accountants' malpractice claims are granted.

### 2. Intentional Tort

Plaintiff alleges Funaro intentionally and recklessly made misrepresentations in its Independent Auditor's Report. Funaro argues the retraction of the financial report negates any inference of scienter required to maintain the intentional tort claims.

This Court recognizes N.J. State. Ann. § 2A:53A-25 does "not shield accountants for intentional acts of fraud or intentional acts which assisted a client in fraud." *State, Dep't of Treasury v. Qwest Commc'ns Int'l., Inc.*, 904 A.2d 775, 781-2 (N.J. Super. Ct. App. Div. 2006). Fraud implies the statements made were not only untrue, but also made with fraudulent intent. *O'Connor v. Ludlam*, 92 F.2d 50, 53 (2d Cir. 1937).

Although violation of the Generally Accepted Accounting Principles ("GAAP") alone is usually insufficient to establish fraud, *Schoenfeld Asset Mgm't LLC. v. Cendant Corp.*, 142 F.Supp. 2d 589, 608 (D.N.J. 2001), when combined with facts indicating that the accountant deliberately ignored the "red flags" in the audited financial statements, the courts have generally inferred fraudulent intent. *See In re Interpool, Inc.*, 2005 WL

2000237 at 16 (D.N.J.); *Qwest*, 904 A.2d at 779 ("inference of scienter proper where plaintiff alleged accountant knew the falsity of the numerous public statements containing false facts").

Since there is nothing in the record directly suggesting that Funaro intended to further the alleged fraudulent scheme, the Court must look at whether fraudulent intent can be inferred. Here, Funaro learned of Allserve's principal's alleged improprieties in India, subsequently investigated and found inaccuracies in the financial documents provided by Allserve. In response to the "red flags," Funaro retracted its Independent Auditor's Report, informed the party in possession of two copies of the report, and took physical possession of thirty-six of the forty copies of the report.

A reasonable fact finder would find that the retraction informs relevant parties not to rely on the retracted document. This Court finds the facts, when construed most favorably for Plaintiff, would not suggest to a rational fact finder that Funaro intended to induce an uninvolved party at the time of retraction to rely on the report months later. Therefore, this Court finds that Funaro did not possess the requisite intent for Plaintiff to maintain an action for fraud.

Federal courts have also recognized a party may be held liable as an aider and abettor to a fraud where a plaintiff establishes: (1) the existence of an independent wrong; (2) knowledge of that wrong; and (3) substantial assistance on the part of the aider or abettor to effectuate that wrong. *Qwest*, 904 A.2d at 782 (citing *Monsen v. Consol. Dressed Beef Co.*, 579 F.2d 793, 799 (3d Cir. 1978)). The mere common plan, design, or even express agreement is not enough for liability in itself. *Restatement (Second) of Torts* §876(b) (1979). New Jersey courts recognize such claims "where one party 'knows that the

other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Qwest*, 904 A.2d at 782 (quoting *Judson v. Peoples Bank Trust & Co.*, 134 A.2d 761, 767 (1957)). The defendant must act willfully and knowingly and "share the same intent as the one who actually committed the offense." *Qwest*, 904 A.2d at 783 (holding that a complaint will not be dismissed when the allegations are not "merely" that the defendant failed to detect the alleged fraudulent reporting "but that it actually facilitated the known fraud").

Plaintiff alleges that in addition to the intent to defraud that can be deduced from Funaro's issuance of and subsequent retraction of its Independent Auditor's Report, Funaro's issuance of the Compilation is also evidence of intent to aid and abet fraud. However, the Compilation expressly states that it is "limited to presenting in the form of financial statements information that is the representation of management" and that Funaro had "not audited or reviewed the accompanying consolidated financial statements and, accordingly, do[es] not express an opinion or any other form of assurance on them." Courts in New Jersey and other jurisdictions have held that reliance on compilations with such disclaimer language is unreasonable. *First Indem. of Am. Ins. Co. v. Letters, Meyler & Co.*, 741 A.2d 176, 179 (N.J. Super. Ct. Law Div. 1998); *see also Evans v. Israeloff, Trattner &Co.*, 208 A.D.2d 891, 892 (N.Y. App. Div. 1994) (investor in corporation could not establish justifiable reliance upon compilations which contained disclaimer language substantively identical to that employed by Funaro). Therefore, the record is devoid of any indication of attempts by Funaro to effectuate the fraud, let alone substantially assist the wrong as required by the law in an action for aiding and abetting fraud.

17

After reviewing the facts and inferences in a light most favorable to the nonmoving party, this Court finds that no genuine issue of material fact exists. Accordingly, Funaro's Motion for Summary Judgment as it pertains to Plaintiff's intentional tort claim is granted.

## C. Turrin Motion

### 1. Negligent Misrepresentation and Accountants' Malpractice

Plaintiff alleges that Turrin committed acts of negligent misrepresentation and accountants' malpractice. Turrin argues Plaintiff has failed to demonstrate "linking conduct" between Turrin and Plaintiff as required to maintain both causes of action.

In the present case, although Plaintiff alleges Turrin should have known of the potential future reliance on its work product by Plaintiff, it does not allege that Plaintiff was specifically identified as a possible claimant. Plaintiff offered no evidence of Turrin's acknowledgement of its reliance other than the mere possession of the Audit Report obtained through a third party. As is the case with Funaro, Plaintiff has not submitted any evidence of communication between itself and Turrin. Furthermore, Turrin's Audit Report does not indicate any understanding or agreement that Plaintiff rely upon any work performed by Turrin.

In sum, the record does not contain evidence satisfying the elements of N.J. Stat. Ann. § 2A:53A-25(b)(2). After reviewing the facts and inferences in the light most favorable to the nonmoving party, this Court finds that no genuine issue of material fact exists. Accordingly, Turrin's Motion for Summary Judgment as it pertains to Plaintiff's negligent misrepresentation and accountants' malpractice claims is granted.

## 2. Intentional Tort

Plaintiff alleges Turrin intentionally and recklessly made misrepresentations in its Audit Report. Turrin argues Plaintiff did not demonstrate evidence of scienter, nor knowledge that any representation made was false, as required to maintain an intentional tort claim.

In the present case, similarly to Funaro in the discussion above, Plaintiff does not contend, and the record does not show, that Turrin had actual knowledge of the alleged fraudulent scheme or the falsity of the underlying financial documents provided by Allserve. Plaintiff's representatives admitted in deposition that their only reason for inferring intentional misrepresentation is the short time between the completion of the Audit Report and Allserve's bankruptcy. Plaintiff fails to demonstrate that Turrin deliberately ignored the "red flags" in furtherance of the alleged fraudulent scheme, let alone had knowledge of the alleged scheme. Therefore, this Court finds no actual or inferred intent by Turrin to deceive or knowingly misrepresent as required to maintain a cause of action under fraud.

In addition, the record is devoid of any fact indicating Turrin's active participation or perpetuation of the alleged fraud. Plaintiff has failed to demonstrate that a reasonable jury could conclude that Turrin was aware of the alleged fraud being perpetuated by Allserve. Plaintiff cannot rely on the allegations in the amended complaint without any other evidence to prove that Turrin acted "willfully and knowingly" to associate itself with any unlawful acts committed by Allserve. *See Pastore v. Bell Tel. Co.*, 24 F.3d 508, 511 (3d Cir. 1994) (holding that the nonmoving party "cannot rely upon conclusory

allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact" sufficient to defeat summary judgment).

After reviewing the facts and inferences in a light most favorable to the nonmoving party, this Court finds that no genuine issue of material fact exists. Accordingly, Defendant Turrin's Motion for Summary Judgment as it pertains to Plaintiff's intentional tort claim is granted.

**CONCLUSION**

For the reasons stated above, Fortran's Motion for Summary Judgment is **denied**, Funaro's Motion for Summary Judgment is **granted**, and Turrin's Motion for Summary Judgment is **granted**.

s/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
Cc: Madeline Cox Arleo, U.S.M.J.
Parties